KAREN L. LOEFFLER
United States Attorney

STEVEN E. SKROCKI
BRYAN D. SCHRODER
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Tel: (907) 271-5071
Fax: (907) 271-1500
E-mail: steven.skrocki@usdoj.gov
bryan.schroder@usdoj.gov

PAUL AHERN
U.S. Department of Justice
National Security Division,
Counter Terrorism Section
950 Pennsylvania Ave NW
Washington, D.C.
Tel: (202) 305-0633
paul.ahern@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:10-cr-00060-RRB |
| Plaintiff, | ) | |
| vs. | ) | SENTENCING MEMORANDUM OF THE UNITED STATES |
| NADIA MARIA PIROSKA ROCKWOOD, | ) | |
| Defendant. | ) | |

**I.  SUMMARY OF SENTENCING RECOMMENDATIONS**

**TERM OF IMPRISONMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **None**

**PROBATION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5 Years**

**FINE.** . . . . . . . . . . . . . . . . . . . . . . . . . . **STIPULATED UNABLE TO PAY**

**SPECIAL ASSESSMENT.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **$100.00**

Nadia Maria Piroska Rockwood (Nadia Rockwood) possesses dual citizenship with the United Kingdom, the country of her birth, and the United States. She has pleaded guilty to lying to federal investigators with respect to passing a target list on behalf of her husband, Paul Rockwood–a target list that Nadia Rockwood knew contained individuals whom her husband sought to murder. While the investigation has not revealed the extent of Nadia Rockwood's knowledge of her husband's plans, it is without disagreement that the surreptitious passing of this target list was done at her husband's request and with the intention of furthering her husband's plans. The agreement reached between the defendant and the United States contemplates that in exchange for the defendant's spouse receiving a maximum term of imprisonment of eight years, Nadia Rockwood will serve a maximum term of five years probation.

For the reasons set forth herein, and with respect to the sentencing factors to be taken into account under 18 U.S.C. § 3553 the United States requests that the court accept the parties' plea agreement and sentence Nadia Rockwood to the terms agreed upon in the plea agreement.

### A. Summary of the Terms of the Agreement

The agreement before the court is a joint agreement between and among the defendant, the defendant's spouse Paul Rockwood and the United States. With respect to Paul Rockwood, his agreement is conditioned on Nadia Rockwood receiving a sentence of probation.

If the court accepts the defendant's plea of guilty as knowing and voluntary, it must proceed to, and find an independent factual basis for Nadia Rockwood's plea of guilty to Count 1 of the Information, that is, False Statements to a Federal Agent in violation of 18 U.S.C. 1001(a)(2) and, in turn, decide whether to accept or reject the parties' proposed plea agreement(s). Given that pending decision, the United States provides the court with the following information with respect to the United States Sentencing Commission Guidelines and the sentencing factors under 18 U.S.C. § 3553.

## II. GUIDELINE APPLICATIONS

### A. Agreement as to Application of Sentencing Guidelines

The parties agree that United States Sentencing Commission Guidelines provide for a sentence for this offense as contemplated in the plea agreement, that being a sentence of probation.

### B. Acceptance of Responsibility

Under a typical U.S.S.G. analysis, and if the guidelines applied, the United States would agree that the defendant has accepted responsibility with respect to a two-point downward adjustment.

### C. Criminal History Category Computation

The United States agrees that the defendant's criminal history category is criminal history category I.

### D. Statutory Penalties

The statutory penalties are as follows:

Count 1: False Statement to a Federal Agent

    1) A maximum term of imprisonment of five (5) years. **(Stipulated probationary sentence of five years)**

    2) a maximum $250,000 fine;

    3) 3 years of supervised release; (not applicable) and

    4) a $100 mandatory special assessment.

***AGREED U.S.S.G. CALCULATIONS:***

### Count 1:

Base Offense Level (2B1.1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Acceptance of Responsibility. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>-2</u>

US v. Nadia Maria Piroska Rockwood
3:10-cr-00060-RRB

Page 4 of 15

Case 3:10-cr-00060-RRB     Document 33     Filed 08/16/10     Page 4 of 15

Total.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Criminal History Category . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

Sentencing Guideline Range . . . . . . . . . . . . . . . . . . . . . . . . . . . 0-4 Months

Probation Range . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5 years

*FINE .. . . . . . . . . . . . . . . . . . . . . . Parties Agree Defendant Unable to Pay a Fine*

## III. APPLICATION OF 18 U.S.C. § 3553(a)

In addition to the Guidelines, the following sentencing factors set forth in 18 U.S.C. § 3553(a) apply: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, afford deterrence, protect the public from further crimes and provide the defendant training and treatment; (3) the kinds of sentences available; (4) the established Guidelines sentencing ranges; (5) any pertinent Guidelines policy statements; (6) the need to avoid unwarranted sentence disparity between defendants with similar records convicted of similar crimes; and (7) the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a)(1) through (7). Each sentencing factor is addressed in turn:

### A. <u>Nature and Circumstances of Offense and the History and Characteristics of the Defendant.</u>

In exchange for complete satisfaction of the terms conditioned by both plea agreements, the United States is willing to recommend a sentence of five years

probation for this defendant. Inasmuch as the court is being asked to approve the agreement, the United States provides under this heading limited and specific facts, to supplement those already provided to the court in the Final Presentence Report concerning the nature and circumstances of the offense, and the history and characteristics of the defendant.

As reflected in the factual basis of the plea agreement Nadia Rockwood's husband Paul Rockwood converted to Islam in late 2001 or early 2002 while living in Virginia. At some point after her husband's conversion, Nadia Rockwood also converted to Islam. After converting, and while residing in Virginia, Paul Rockwood gravitated to the violent- Jihad-promoting ideology of cleric Anwar al-Awlaki (Al-Awlaki). Over time, Rockwood adherence to Al-Awlaki's teachings grew in conviction, manifesting into a personal conviction that it was Rockwood's personal responsibility to exact revenge by death on anyone who desecrated Islam. There is no evidence from the investigation to establish that Nadia Rockwood harbored similar beliefs concerning revenge.

Before moving to Alaska in 2006, Paul Rockwood began researching and selecting possible targets for future execution and continued that search after his relocation to King Salmon in 2006. While living in King Salmon, Rockwood continued his adherence to Al-Awlaki's ideology, though it appears he kept those

tenants to himself. For her part, Nadia Rockwood was aware of her husband's devotion and adherence to Al-Awlaki's lectures and written works.

Along with the selection of specific targets Rockwood also began researching the ways he would execute those on his target list. Among other topics, Rockwood researched individual explosive components, construction of remote triggering devices such as cellular telephones, and the construction of improvised explosive devices for delivery by common carrier. The investigation did not reveal whether Rockwood ever shared any of his research results or targeting methodology with his spouse.

In late 2009, Rockwood began to share his plans about committing acts of domestic terrorism with others whom he felt comfortable shared his beliefs. With some, this including discussing the use of mail bombs and the possibility of killing targets by gunshot to the head. By early 2010, Rockwood's intended target list was formalized to include approximately 20 specific targets. Thereafter, in April, 2010, Rockwood gave his written target list to his wife Nadia Rockwood who carried the list with her on a trip to Anchorage. The target list was subsequently obtained by investigators of the Federal Bureau of Investigation's Joint Terrorism Task Force ("JTTF"). For her part, Nadia Rockwood was aware of her husband's intention to cause to harm to others and was further aware that what she carried to

Anchorage was in furtherance of Paul Rockwood's intent to harm others. While the exact timing of Rockwood's plan had yet to be concretely formalized, Nadia Rockwood was aware of her husband's intentions to harm others in the name of Islam, and that the list brought by her into Anchorage was in furtherance of that goal.

On May 19, 2010, the Rockwood's were interdicted by the JTTF at the Ted Stevens Anchorage International Airport while en route to Boston, Massachusetts. Both Paul and Nadia Rockwood were interviewed by agents of the JTTF with respect to the target list.

During his interview, JTTF agents interviewed and provided Paul Rockwood a copy of his target list that had been obtained by investigators after Nadia Rockwood's delivery of the list to another in April. In response to investigators' questions, Paul Rockwood knowingly provided materially false statements and explanations about the target list, including denying that he created the list, denying the purpose of the list, and denying ever having such a list of names. During the interview, Rockwood attempted to place responsibility for the list on another when, in truth and fact, Rockwood selected the names and entities appearing on the list as those he believed should be targeted for assassination and attack.

During her interview, Nadia Rockwood provided materially false and evasive answers when asked by agents about whether she had ever delivered anything on behalf of her husband to another in Anchorage. With respect to the note received from her husband for delivery, Nadia Rockwood responded several times that she may have delivered a "book or an envelope" but she really couldn't remember, when, in truth and fact, Nadia Rockwood covertly and surreptitiously transferred the list to another in a local Anchorage business establishment.

The following is a summary of the target list created by Paul Rockwood, and delivered by Nadia Rockwood in order to further her husband's plans. The names, geographic information and any other identifiers for each target have been omitted:

- Target #1 listed an individual's name;

- Target #2 listed individual's name, military rank, and branch of military service;

- Target #3 listed an individual's name, branch of military service, and hometown;

- Target #4 listed an individual's name, branch of military service, military rank, and hometown, spouse's name, number of children and place of employment;

- Target #5 listed an individual's name, branch of military service, employment status, and hometown;

- Target # 6 listed an individual's name, age, hometown, and the individual's spouse's and name of the target's child;

- Target #7 listed a religious organization;

- Target #8 listed an individual's name, age, home town, parent and sibling's name;

- Target #9 listed an individual's name;

- Target #10 listed an individual's name, branch of service, military rank and hometown;

- Target #11 listed an individual's name and military rank;

- Target #12 listed an individual's name, military rank and hometown;

- Target #13 listed a religious organization and its address;

- Targets #14 and 15 listed an individual's name, rank, and hometown;

- Target # 15 listed an individual's name, rank and hometown;

- Target #16 listed an individual's name and hometown;

- Target #17 listed the name of a publishing company;

- Target #18 listed the name of a publishing company;

- Target #19 listed the name of a publishing company executive;

- Target #20 listed a media personality, and an email/website addresses associated with the media personality.

The government's investigation, as reflected in the Final Presentence Report established that Paul Rockwood researched ways of sending an improvised explosive device, that he purchased components, developed his own plans for explosive initiators and selected his targets. Rockwood's intent to assassinate United States citizens and uniformed members of its armed forces has been in place for four years. It is unknown to what extent he shared his views with his spouse. However, given the information learned by the investigation, and as stated in her spouse's sentencing memorandum, this was not a matter of "if", but a case of "when" with the "when" becoming more likely with Paul Rockwood's departure from King Salmon. Nadia Rockwood's role, as deliverer of the target list, fit into Rockwood's need for operational security. And while the investigation revealed her knowledge that what she delivered was directed toward causing others harm, the investigation did not reveal to what extent Paul Rockwood shared his operational details with his spouse. Nevertheless, her decision to act as a courier with knowledge of her husband's intent to harm is, to say the least, cause for concern.

## B. Need for the Sentence to Reflect the Seriousness of the Offense, Afford Deterrence, Protect the Public, and Rehabilitate the Defendant.

The defendant is pleading guilty to a felony offense. The guideline estimate is in accord with the sentence recommended by the parties. A sentence of five years probation, in exchange for her husband's eight years incarceration is a sentence that will reflect the seriousness of the offense, the offense conduct, afford deterrence and protect the public.

## C. Kinds of Sentences Available.

The term of probation agreed to by the parties is within the guideline range. The only other options which remain involve minimal incarceration which, on balance, and given the defendant's medical concerns with respect to her pregnancy are outweighed by a long-term period of probation.

## D. Sentencing Ranges Available.

The only other sentencing range available involves minimal incarceration which, due to the inter-connected nature of the plea agreements is outweighed by Paul Rockwood's sentence of eight years imprisonment. In light of the defendant's role in this offense, and given the information obtained by the government's investigation, the government believes this sentence to be appropriate under the circumstances.

E.   **Pertinent Policy Statements.**

The United States is unaware of any pertinent policy statements applicable to the sentence it recommends.

F.   **Need to Avoid Sentence Disparity.**

The sentence sought takes into account the full range of offense conduct. There is, to the government's knowledge, no issue with respect to sentencing disparity. The defendant has admitted to lying to investigators about acting as a courier for her husband in delivering a list of individuals selected for death. Her husband has elected to serve the maximum terms of imprisonment. Nadia Rockwood's sentence of probation, given the investigation's results is appropriate under the circumstances.

G.   **Restitution.**

Restitution is not applicable in this case.

H.   **Victim Impact.**

The United States anticipates several victims will be providing written or oral commentary to the court prior to, and or during sentence. Several will be calling in to partake in the sentencing hearing telephonically. The United States will provide this information to the court prior to imposition of sentence.

## IV. CONCLUSION

Paul Rockwood's plans to murder citizens of the United States as revenge for alleged acts against Islam and its followers, was beyond the targeting phase and had entered the operational phase when he was confronted by law enforcement. Due to the work of investigators those plans have now been thwarted and the public made aware of Rockwood's intentions. Nadia Rockwood played a discrete, but important role for her husband–that of courier of the target list. Here, the government is not so naive to suggest Paul Rockwood never shared his thoughts, plans and intentions with his spouse, however the investigation had to make itself known to the Rockwoods prior to determining the true extent of her knowledge and understanding. Clearly, the bulk of the evidence rests against Paul Rockwood who, by his agreement, will be serving a significant period of imprisonment. Nadia Rockwood's conviction and sentence is reflective of her limited role in her husband's plans. While the role was certainly limited it was a similarly a role of some significance and substance. Had there been more

//

//

evidence with respect to any further involvement or understanding Nadia Rockwood's situation before this court would have been significantly different.

RESPECTFULLY SUBMITTED this 16<u>th</u> day of August, 2010, in Anchorage, Alaska.

        KAREN L. LOEFFLER
        United States Attorney

        s/Steven E. Skrocki
        STEVEN E. SKROCKI
        Assistant U.S. Attorney
        222 West Seventh Avenue, #9, Room 253
        Anchorage, Alaska  99513-7567
        (907) 271-5071
        (907) 271-1500 (fax)
        Steven.Skrocki@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on August, 2010
a copy of the foregoing was served electronically on:

James Wendt

s/ Steven E. Skrocki